UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RBS CITIZENS, N.A.,
    Plaintiff,

v.                                               C.A. No. 14-cv-02-M

AVAYA, INC., CIT FINANCE, LLC, and
CIT COMMUNICATIONS FINANCE
CORPORATION,
    Defendants.

## ORDER

This matter is before the Court on two motions: Avaya, Inc. seeks dismissal of counts III and IV (ECF No. 13); and CIT Finance, LLC and CIT Communications Finance Corporation (collectively, "CIT") moved to dismiss count IV. (ECF No. 10.)[1] After comprehensive briefing and lengthy oral argument, this Court DENIES both motions to dismiss.

## I. BACKGROUND[2]

RBS Citizens, N.A. ("Citizens") has done business with the defendants concerning the leasing, installation, service, and maintenance of telecommunications equipment since at least 1997. (ECF No. 1 at ¶ 8.) A 1997 lease remains the governing agreement for Citizens' rental of telecommunications equipment in New England from the defendants. *Id.* at ¶ 16.

In 2000, Citizens acquired USTrust and its branches, including a facility in Medford, Massachusetts. *Id.* at ¶ 17. At the time of the acquisition, USTrust was party to a 1999 lease

---

[1] This Court already DENIED as MOOT the motion to strike the jury demand (contained in ECF No. 10) because Citizens withdrew its jury demand. (ECF No. 18 at 1 n.1.)

[2] At the motion to dismiss stage, this Court "accept[s] the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor." *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).

with an entity that became CIT Communications Finance. *Id.* at ¶ 20. Under the 1999 lease, a telephone system called the Definity System was used at the Medford, Massachusetts facility. *Id.* at ¶ 21. Upon acquisition, USTrust's facilities, including the facility in Medford, were brought under the purview of the 1997 lease. *Id.* at ¶ 18.

In December of 2006, Citizens and Avaya entered into a new Customer Agreement (Global) ("2006 Agreement") in anticipation of rolling out upgraded telecommunications equipment at numerous facilities, including the Medford, Massachusetts facility. *Id.* at ¶¶ 22, 23. The 2006 Agreement[3] applied to all agreements between the parties. *Id.* at ¶ 22. In connection with the 2006 Agreement, the defendants replaced the Definity System at the Medford facility and effected termination of the 1999 lease to the extent it had not been actually or constructively terminated. *Id.* at ¶ 24.

In April of 2013, Citizens learned that it was being invoiced on and making payments under the 1999 lease — a lease that had been terminated and replaced — for the Definity System that was no longer in service. *Id.* at ¶¶ 27, 30, 31, 37. Contrary to the established protocol, the invoices on the 1999 lease were sent to an address different from the address where all other Citizens invoices were sent. *Id.* at ¶ 31. The 1999 lease never appeared on the lists of all active lease schedules, and the defendants failed to mention it during periodic renegotiations of all active leases. *Id.* at ¶ 32.

---

[3] The 2006 Agreement states that it supersedes the terms and conditions in the agreements that were in effect in December of 2006. (ECF No. 13-2 at 5.) At the motion to dismiss stage, this Court may consider the 2006 Agreement because "documents the authenticity of which are not disputed by the parties" and "documents sufficiently referred to in the complaint" may be considered without converting the motion into one for summary judgment because those documents "merge[] into the pleadings." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001) (internal quotation marks and citations omitted).

The defendants have admitted that by 2007, Citizens had paid the full value of the Definity System. *Id.* at ¶ 37. The cumulative total of invoices paid by Citizens from 2007 through its final payment in 2013 is at least $1 million. *Id.* The defendants have failed to repay Citizens. *Id.* at ¶ 56.

Citizens filed suit in this Court alleging breach of the 1997 lease (count I); breach of the implied covenant of good faith and fair dealing (count II); unjust enrichment (count III); and unfair and deceptive trade practices (count IV). *Id.* at ¶¶ 44-63. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. STANDARD OF REVIEW

Two motions to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure bring this matter before this Court. (ECF Nos. 10, 13.) "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán*, 734 F.3d at 102 (quoting Fed.R.Civ.P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán*, 734 F.3d at 102-03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference

3

that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *García-Catalán*, 734 F.3d at 103 (quoting *Iqbal*, 556 U.S. at 679).

### III. CIT'S MOTION TO DISMISS

CIT seeks dismissal of count IV, the unfair and deceptive trade practices claim brought under Mass. Gen. Laws ch. 93A, § 11. (ECF Nos. 10, 21.) CIT first argues that the 1997 lease's selection of Rhode Island law means that Rhode Island law governs because courts apply the law selected in contracts where parties stipulate to it, it bears a real relationship to the contract, and it is not contrary to the public policy of the forum state. (ECF No. 11 at 7-8; ECF No. 21 at 4-5.) Citizens disagrees and contends that the ch. 93A claim does not involve the 1997 lease itself; rather, it alleges misrepresentations and deceptive conduct to avoid detection of overbilling so it is beyond the scope of the 1997 lease's choice of law provision.[4] (ECF No. 18-1 at 5-8.)

The relevant provision in the 1997 lease states that "the internal laws" of Rhode Island govern "each lease under this agreement."[5] (ECF No. 11-1 at 3, 6.) Citizen's ch. 93A claim involves unfair or deceptive acts or practices such as sending invoices to a different address, failing to include the 1999 lease on lists of active leases, and failing to mention the 1999 lease when renegotiating leases; the ch. 93A claim does not involve construction or interpretation of the 1997 lease. Therefore, the specification that the law of Rhode Island governs "each lease

---

[4] To the extent this Court reaches general choice of law principles, Citizens argues that it would be premature for this Court to conduct the fact-intensive "interest-weighing" choice of law analysis. (ECF No. 18-1 at 8-11.)

[5] This Court may consider the 1997 lease without converting the pending motion into one for summary judgment. *See Alt. Energy, Inc.*, 267 F.3d at 33-34.

under [the 1997] agreement" does not mandate that Rhode Island law applies to bar the ch. 93A claim. *See Kitner v. CTW Transport, Inc.*, 762 N.E.2d 867, 872 (Mass.App.Ct. 2002) ("if a particular defendant's unfair conduct with respect to a contract sounds in tort, c. 93A will apply to that contract notwithstanding a contract provision that states that contractual claims will be interpreted under another States law").

CIT also contends that the ch. 93A claim "is merely a restatement of [Citizens'] breach of contract claim" and therefore should be dismissed under Rhode Island law. (ECF No. 21 at 5-7.) Citizens counters that its ch. 93A claim does not restate its breach of contract claim but rather asserts that the defendants "actively covered up the improper overbilling through independent acts of deceit." (ECF No. 24 at 2.) Based on the allegations in the complaint such as billing for removed equipment, sending invoices to a different address, and failing to include the 1999 lease on lists of all active leases, this Court finds that Citizens' ch. 93A claim is an independent claim separate and apart from the breach of contract claim.

In its Reply, CIT directs this Court to section 15 of the 1997 lease. (ECF No. 21 at 7-9.) Section 15 is entitled "Lessor Disclaimers; Limitation of Remedies." (ECF No. 21-1 at 2-3.) CIT contends that section 15 limits defendants' liability to Citizens for statutory claims, as well as damages "arising out of" or "concerning" the 1997 lease, among other things. (ECF No. 21 at 8.) Citizens responds that section 15, when read in its entirety, disclaims and limits the liability of the lessor for warranty and product liability claims related to the leased equipment. (ECF No. 24 at 4.) According to Citizens, in section 15 the lessor assigns its warranty and product-related claims against the seller to the lessee, Citizens. *Id.* at 5. Citizens further explains that the last sentence of section 15 does not waive all statutory claims, but rather it ensures that the

disclaimers earlier in the text are not altered by rights granted to a lessee under the UCC or otherwise. *Id.* at 6-7.

After scrutinizing section 15, this Court finds that it does not bar Citizens' ch. 93A claim. Section 15 pertains to product liability and product warranties that run to a lessee. It states that the lessor, who is not the manufacturer or seller, disclaims certain liabilities relating to the equipment. The chapter 93A claim is not "arising out of" or "concerning" the 1997 lease and there is no language barring an unfair or deceptive trade practices claim against the defendants.

## IV. AYAVA'S MOTION TO DISMISS

Avaya seeks dismissal of the two claims asserted against it, the unjust enrichment claim (count III) and the unfair and deceptive trade practices claim (count IV). (ECF No. 13 at 1.) Avaya first contends that both claims should be dismissed in favor of arbitration because there is a binding arbitration provision in the 2006 Agreement. (ECF No. 13-1 at 3, 4-6; ECF No. 20 at 2-4.) The binding arbitration provision applies to disputes "arising out of or relating to" the 2006 Agreement. (ECF No. 13-2 at 10.) Since the claims against Avaya do not arise out of or relate to the 2006 Agreement, this argument fails.

### A. Unjust Enrichment

Avaya seeks dismissal of the unjust enrichment claim because Citizens has failed to state a claim under either New York or Rhode Island law.[6] (ECF No. 13-1 at 11-14; ECF No. 20 at 6-9.) Avaya further argues that Citizens cannot bring an unjust enrichment claim when Citizens concedes that there are lease agreements covering the basis for Citizens' claims and Citizens brings a breach of contract claim. (ECF No. 13-1 at 14.) Citizens responds that it has adequately

---

[6] Avaya presumably believes that Rhode Island's choice of law analysis will lead to a finding that either New York or Rhode Island law applies.

alleged an unjust enrichment claim under both Rhode Island and Massachusetts law.[7] (ECF No. 19-1 at 10.)

Avaya's focus on New York law, the law specified in the 2006 Agreement, is unpersuasive because the choice of law provision specifying New York law applies to the 2006 Agreement and "any disputes arising out of or relating to" the 2006 Agreement. (ECF No. 13-2 at 10.) As Citizens' claims do not pertain to the 2006 Agreement, nor do they arise out of or relate to that agreement, the claims are not governed by the choice of New York law. Regarding the sufficiency of the allegations, Citizens contends that it overpaid more than $1 million to the defendants who provided nothing of value for those payments; the defendants accepted the payments; the defendants admitted that they overbilled by at least $1 million; and the defendants failed to repay those funds to Citizens. (ECF No. 1 at ¶¶ 37, 38 55, 56.) This Court finds that Citizens has plead a plausible unjust enrichment claim against Avaya. *See Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (elements of unjust enrichment under Rhode Island. law); *Koufos v. U.S. Bank, N.A.*, 939 F.Supp.2d 40, 52 (D.Mass. 2013) (elements of unjust enrichment under Massachusetts law). Finally, since Citizens has pled its unjust enrichment claim in the alternative, the presence of a breach of contract claim and an unjust enrichment claim at this juncture is not cause for dismissal of the unjust enrichment claim. *See, e.g., Lass v. Bank of America, N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (permitting both unjust enrichment claim and breach of contract claim to proceed beyond motion to dismiss).

### B. Unfair and Deceptive Trade Practices

Avaya argues for dismissal of the unfair and deceptive trade practices act claim brought under Mass. Gen. Laws ch. 93A because Massachusetts law does not apply. (ECF No. 13-1 at 7-

---

[7] Citizens presumably believes that Rhode Island's choice of law analysis will lead to a finding that either Massachusetts or Rhode Island law applies.

11; ECF No. 20 at 4-6.) Avaya initially contends that the selection of New York law in the 2006 Agreement applies. (ECF No. 13-1 at 8.) This argument fails because the ch. 93A claim does not pertain to, arise out of, or relate to the 2006 Agreement.

Next Avaya focuses on Rhode Island's choice of law analysis for contract cases and contends that under either the "place of contract" or "interest weighing" analysis, Rhode Island law would govern so Citizens cannot bring a ch. 93A claim. (ECF No. 13-1 at 9-10.) Citizens responds that its ch. 93A claim sounds in tort for choice of law purposes and therefore the "interest weighing" analysis is appropriate. (ECF No. 19-1 at 7-8.) Further, Citizens contends that in this case, it would be premature to conduct the choice of law analysis at the motion to dismiss stage. *Id.* at 8-9.

Citizens alleges tort-like conduct: actively concealing double billing; sending invoices to an address against the protocol established by the parties; failing to include the lease on a list of all active leases; and failing to mention the lease during negotiations. (ECF No. 1 at ¶¶ 31, 32.) And Citizens seeks tort-like remedies: treble damages and attorneys' fees and costs. *Id.* at 10. Therefore, Citizens chapter 93A claim sounds in tort for choice of law purposes. *See Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 11-12 (1st Cir. 1994) ("We hold that, at minimum, when a chapter 93A claim and the requested remedy are highly analogous to a tort claim and remedy, the chapter 93A claim should be considered as a tort for choice-of-law purposes.").

To determine what state law applies to the chapter 93A claim, this Court "must employ the choice-of-law framework of the forum state, here, Rhode Island." *Crellin*, 18 F.3d at 4. Rhode Island courts employ the "interest weighing" choice of law analysis. *See Taylor v. Massachusetts Flora Realty, Inc.*, 840 A.2d 1126, 1128 (R.I. 2004). The Rhode Island Supreme

Court has identified five factors to be weighed in conducting this analysis: "(1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." *Najarian v. Nat'l Amusements, Inc.*, 768 A.2d 1253, 1255 (R.I. 2001) (quoting *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I. 1986)). And in tort cases, the following contacts should be considered: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Najarian*, 768 A.2d at 1255 (quoting *Brown v. Church of the Holy Name of Jesus*, 252 A.2d 176, 179 (R.I. 1969)).

Since this matter is at the motion to dismiss state, this Court has before it only the complaint and the documents that have merged into the pleadings. This Court does not have the benefit of discovery. While some courts have undertaken a choice of law analysis at the motion to dismiss stage, this Court finds that it would be inappropriate to do so in this case because the requisite material to conduct the evidence-intensive analysis is not yet available. *Compare Adams v. Rubin*, 964 F.Supp. 507 (D.Me. 1997) (court conducts Maine's choice of law analysis at the motion dismiss stage), *with Harper v. LG Elecs. USA, Inc.*, 595 F.Supp.2d 486, 490-91 (D.N.J. 2009) (court unable to conduct New Jersey's "fact-intensive choice-of-law determination" at the motion to dismiss stage), *and Burdick v. Air & Liquid Sys. Corp.*, No. PC 11-3431, 2012 WL 5461184 (R.I. Super. Nov. 2, 2012) (court finds that it would be premature to conduct Rhode Island's choice of law analysis at the motion to dismiss stage).

## V. CONCLUSION

This Court finds that Citizens' ch. 93A claim and unjust enrichment claim both survive the motions to dismiss. This Court, however, is mindful that many of the arguments raised in the pending motions may be revisited at the summary judgment stage. Therefore, Avaya's Motion to Dismiss (ECF No. 13) is DENIED and CIT's Motion to Dismiss (ECF No. 10) is DENIED.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

May 23, 2014